**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ACUSHNET COMPANY,<br><br>                           Plaintiff,<br><br>     v.<br><br>BENJAMIN RUSSELL, INDIVIDUALLY AND D/B/A IMADEBOGEY.COM,<br><br>                           Defendant. | Civil Action No. _____<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

Plaintiff Acushnet Company ("Plaintiff" or "Acushnet") brings this complaint for trademark infringement, false designation of origin, unfair competition, trademark dilution, and unfair trade practices arising under federal, state, and/or common law against Benjamin Russell, individually and d/b/a Imadebogey.com ("Defendant"). Plaintiff, by its undersigned attorneys, alleges as follows, upon actual knowledge as to itself, and upon information and belief as to all other matters:

## **NATURE OF ACTION**

1. This is a civil action for trademark infringement, false designation of origin, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, trademark dilution under Mass. Gen. Laws ch. 110H, § 13, unfair trade practices under Mass. Gen. Laws ch. 93A, § 11, and unfair competition under the common law of Massachusetts.

2. Defendant is advertising, promoting, offering for sale, selling, and distributing golf apparel, headwear, and accessories under the marks TITTIES and TITLOST depicted in Plaintiff's distinctive stylized "TITLEIST" script (the "Infringing Marks") in violation of Plaintiff's trademark rights. Plaintiff seeks equitable relief and damages for Defendant's use of

the Infringing Marks, which are confusingly similar to and dilutive of Plaintiff's federally registered and famous TITLEIST trademark.

## PARTIES

3. Plaintiff is a corporation organized under the laws of Delaware, having its office and principal place of business at 333 Bridge Street, Fairhaven, Massachusetts 02719.

4. Defendant is an individual residing at, and operating an unincorporated business located at, 33 Oak Street, North Providence, Rhode Island 02911.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§ 1331 and 1338 (a) and (b). This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the matter in controversy is between citizens of different states and exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. In addition, this Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

6. This Court has personal jurisdiction over Defendant, and venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b), because Defendant transacts business in this District using the Infringing Trademarks that give rise to Plaintiff's claims, Defendant promotes, offers for sale, sells, and distributes goods under the Infringing Trademarks to customers located in this District, and Defendant is causing harm to Plaintiff in this District.

## ACUSHNET'S ACTIVITIES AND ITS TRADEMARKS

7. Acushnet is a global leader in the design, development, manufacture, and distribution of exceedingly high-quality, performance-driven golf products that are sold under

multiple world-famous, federally registered and common law trademarks, including PINNACLE, FOOTJOY, and TITLEIST.

8. For over 80 years, Acushnet and its predecessors in interest have continuously used the iconic TITLEIST trademark shown below in commerce for a wide range of golf equipment, accessories, and apparel, including golf balls, clubs, bags, gloves, head covers, clothing, and headwear:

*Titleist*

9. Acushnet spends considerable amounts of money every year in connection with the advertising and promotion of its TITLEIST products throughout the world.

10. Acushnet's continuous widespread promotion and use of the TITLEIST trademark—since as early as 1933—has led it to become the top brand in the sport of golf. In 2016 alone, Acushnet had more than $500 million in sales of TITLEIST-branded golf balls, over $400 million in sales of TITLEIST-branded golf clubs, and more than $130 million in sales of other TITLEIST-branded golf gear, such as bags, headwear, gloves, and head covers. Its famed TITLEIST PRO V1 golf ball has been the top-selling golf ball in the market since its launch in 2000, with total sales in excess of $4.5 billion.

11. TITLEIST is the brand of choice among numerous male and female professional golf players. Currently, there are 925 professional golf players worldwide that use TITLEIST products. TITLEIST golf balls have been played by more professional players on the U.S. Professional Golf Association Tour than all other brands of golf balls combined.

12. Acushnet also owns numerous federal trademark registrations for the mark TITLEIST and the distinctive stylized TITLEIST mark, which cover a variety of golf equipment, accessories, and apparel, including Registration Nos. 0316118, 0934406, 0933271, 1155766,

1273662, and 3176825.  True and correct copies of printouts from the United States Patent and Trademark Office database showing the current ownership and status of these registrations are attached as Exhibit A.

13.	All of the foregoing registrations are valid, subsisting, and incontestable. Pursuant to 15 U.S.C. §§ 1065 and 1115(b), these registrations constitute conclusive evidence of Acushnet's exclusive right to use the TITLEIST marks as shown in those registrations in connection with the goods identified therein.

14.	By virtue of its long and extensive use, its substantial promotional and marketing efforts, and its strong sales of and revenues from products offered under the TITLEIST mark, Acushnet has established considerable goodwill and recognition, and valuable trademark rights, in its TITLEIST mark.  Moreover, the TITLEIST mark is, and has long been, widely recognized by the general consuming public as the designation of source of the goods offered and provided by Acushnet.

15.	By virtue of the inherent strength of the TITLEIST mark as applied to Acushnet's products, the extensive worldwide use and promotion of the TITLEIST mark by Acushnet, the strong commercial success of the goods sold under the TITLEIST mark for more than 80 years, and the federal registrations for the TITLEIST mark on the Principal Register, the TITLEIST mark has long become famous.

**DEFENDANT'S UNLAWFUL ACTS**

16.	Defendant is not now, nor has it ever been, a licensee of the TITLEIST trademark, or otherwise authorized in any way to use the TITLEIST trademark.

17.	Defendant uses and has used the Infringing Marks in connection with advertising, promoting, offering for sale, selling, and distributing to the consuming public golf apparel,

namely t-shirts and sweatshirts; golf towels; golf head covers; headwear, namely mesh hats, snapbacks, visors, and beanies; golf tees; ball markers; and ball marker divot tools.

18. As shown below, Defendant intentionally uses the marks TITTIES and TITLOST in a stylized script that is identical to the distinctive stylized script that Plaintiff has been using for its TITLEIST mark for the past 84 years, and that is covered by several of Plaintiff's federal trademark registrations for its TITLEIST mark. Defendant's marks begin with the same prefix ("Tit-") as Plaintiff's mark, and they contain other letters in common ("ie" and "st"), the result of which is that the Infringing Marks bear a strikingly similar visual resemblance to the famous TITLEIST mark.

  

19. Defendant uses the Infringing Marks in connection with identical or closely related goods, targets the same classes of consumers, and uses similar sales channels as Plaintiff.

20. Despite Defendant's knowledge that it is without authority to use Plaintiff's TITLEIST trademark, Defendant's social media accounts also feature and have featured Plaintiff's golf bags—with the TITLEIST mark prominently displayed in the distinctive stylized TITLEIST script—immediately adjacent to Defendant's products bearing the Infringing Marks. Printouts from Defendant's Instagram and Facebook pages showing examples of Defendant's unauthorized use of the TITLEIST mark are attached as Exhibit B.

21. Defendant's unauthorized use of the TITLEIST mark falsely suggests that its goods are connected to, sponsored, approved or authorized by, or affiliated in some way with, Plaintiff.

22. Defendant's use of the Infringing Marks also intentionally creates an unwholesome and undesirable association—one involving a patently offensive and obscene reference to sexual organs and sexual activity—in the minds of consumers that conflicts with the positive associations and images that Plaintiff has long promulgated in advertising and promoting its TITLEIST products, and that tarnishes Plaintiff's TITLEIST brand identity and reputation.

23. Defendant posted a crude, hand-drawn depiction of a naked woman next to its TITTIES-branded golf hat on its Instagram account, including the hashtag #golfporn to solidify its intention to evoke an unwholesome image involving sexual activity and obscenity in connection with the promotion and sale of its goods. Printouts from Defendant's Instagram page depicting these images are attached as Exhibit C.

24. Defendant's actions and use of the Infringing Marks are offensive not only to women, but to consumers in general, including men and women of all ages who are offended by vulgar language, inappropriate sexual references, and the disparagement of women.

25. In an April 7, 2017 letter sent by its outside counsel, Plaintiff objected to Defendant's use of the Infringing Marks, and demanded that Defendant discontinue all use of the Infringing Marks.

26. In a response dated April 25, 2017 sent by its outside counsel, Defendant disputed Plaintiff's claims, and refused to discontinue using the Infringing Marks.

27. To date, Defendant continues to use the TITLEIST mark and the Infringing Marks in connection with advertising, promoting, offering for sale, selling, and distributing the aforementioned golf apparel, headwear, and accessories.

28. At the time that Defendant began using the TITLEIST mark and the Infringing Marks, Defendant had actual knowledge of Plaintiff's rights to the TITLEIST mark, including its distinctive stylized script, and the Infringing Marks' unwholesome and obscene association with sexual activity. Accordingly, Defendant's use of the TITLEIST mark and the Infringing Marks was done willfully and in bad faith in an effort to dilute and trade off of the fame, reputation, and goodwill of Plaintiff and its famous TITLEIST trademark.

## INJURY TO ACUSHNET AND THE PUBLIC

29. Defendant's actions described above have damaged and injured and, if permitted to continue, will further damage and injure Acushnet, the TITLEIST trademark, Acushnet's reputation and goodwill associated with the TITLEIST trademark, Acushnet's reputation for exceedingly high-quality products, and the public's interest in being free from confusion and deception.

30. Defendant's actions described above have caused and are likely to cause confusion or mistake, or to deceive, as to the source or origin of Defendant's products, and have falsely suggested and are likely to falsely suggest a sponsorship, connection, license, or association of Defendant, and its goods and commercial activities, with Acushnet, thereby injuring Acushnet and the public.

31. Defendant's actions described above are likely to dilute the distinctiveness and value of Acushnet's famous TITLEIST trademark, thereby injuring Acushnet.

32. Defendant's actions described above have irreparably harmed and, if not enjoined, will continue to irreparably harm Acushnet and its TITLEIST trademark.

33. Acushnet has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement**
**Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

34. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 33 of this Complaint.

35. Defendant's actions described above are likely to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Defendant's products and commercial activities, and thus constitute trademark infringement of Plaintiff's federally registered trademarks referred to in Paragraph 12 above in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

36. The actions of Defendant described above have at all times relevant to this action been willful and knowing.

37. As a direct and proximate result of the actions of Defendant alleged above, Plaintiff has been damaged and will continue to be damaged.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement, False Designation of Origin, and Unfair Competition**
**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

38. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 37 of this Complaint.

39. Defendant's actions described above are likely to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Defendant's products and commercial activities, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to Plaintiff's trademark rights in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

40. The actions of Defendant described above have at all times relevant to this action been willful and knowing.

41. As a direct and proximate result of the actions of Defendant alleged above, Plaintiff has been damaged and will continue to be damaged.

### THIRD CLAIM FOR RELIEF
### Unfair Competition Comprising of False and Misleading Statements of Fact
### Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

42. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 41 of this Complaint.

43. By engaging in the actions described above, Defendant has made, and continues to make, false and misleading representations of fact to consumers and potential consumers, which in commercial advertising or promotion, misrepresents the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

44. The actions of Defendant described above have at all times relevant to this action been willful and knowing.

45. As a direct and proximate result of the actions of Defendant alleged above, Plaintiff has been damaged and will continue to be damaged.

### FOURTH CLAIM FOR RELIEF
### Trademark Dilution
### Under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1)

46. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 45 of this Complaint.

47. Defendant's actions described above, all occurring after the TITLEIST trademark became famous, are likely to cause dilution by blurring or by tarnishment, or both, of the

distinctive quality of that famous TITLEIST trademark in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

48. The actions of Defendant described above have at all times relevant to this action been willful and knowing.

49. As a direct and proximate result of the actions of Defendant alleged above, Plaintiff has been damaged and will continue to be damaged.

### FIFTH CLAIM FOR RELIEF
### Trademark Dilution
### Under Mass. Gen. Laws ch. 110H, § 13

50. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 49 of this Complaint.

51. Defendant's actions described above are likely to cause injury to Plaintiff's business reputation and to dilute the distinctive quality of Plaintiff's famous TITLEIST trademark, valid at common law, in violation of Mass. Gen. Laws ch. 110H, § 13.

52. The actions of Defendant described above have at all times relevant to this action been willful and knowing.

53. As a direct and proximate result of the actions of Defendant alleged above, Plaintiff has been damaged and will continue to be damaged.

### SIXTH CLAIM FOR RELIEF
### Unfair Trade Practices
### Under Mass. Gen. Laws ch. 93A, § 11

54. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 53 of this Complaint.

55. Plaintiff and Defendant are each engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

56. Defendant's acts and practices described above constitute unfair methods of competition and unfair or deceptive acts or unlawful practices, which were committed by Defendant primarily and substantially in the Commonwealth of Massachusetts, and have the effect, or are likely to have the effect, of causing Plaintiff to suffer loss of money or property, in violation of Mass. Gen. Laws ch. 93A § 11.

57. The actions of Defendant described above have at all times relevant to this action been willful and knowing.

58. As a direct and proximate result of the actions of Defendant alleged above, Plaintiff has been damaged and will continue to be damaged.

## SEVENTH CLAIM FOR RELIEF
### Common Law Unfair Competition

59. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 58 of this Complaint.

60. Defendant's actions described above create the impression in the mind of the public that Plaintiff is responsible for the quality and performance of Defendant's products, or is otherwise connected or associated with Defendant, and thus constitute common law trademark infringement and unfair competition in violation of Plaintiff's rights under the common law of the Commonwealth of Massachusetts.

61. The actions of Defendant described above have at all times relevant to this action been willful and knowing.

62. As a direct and proximate result of the actions of Defendant alleged above, Plaintiff has been damaged and will continue to be damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

    A.    An Order declaring that Defendant's use of the TITLEIST mark and the Infringing Marks, as described above, infringes Plaintiff's trademark rights, and that Defendant's actions constitute trademark infringement, false designation of origin, unfair competition, trademark dilution, and unfair trade practices arising under federal, state, and/or common law;

    B.    An injunction permanently enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

        1.    From using the TITLEIST trademark, and any mark that is confusingly similar thereto, including without limitation, the Infringing Marks, or any other mark using the stylized TITLEIST script, or any other name, mark, or design that is dilutive or likely to lead consumers to mistakenly believe that its products or services are associated with or authorized by Plaintiff; and

        2.    From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant are associated, approved, sponsored, or connected in any way with Plaintiff.

    C.    An Order requiring Defendant to surrender to Plaintiff all products, merchandise, and promotional materials, and any other physical items in Defendant's possession or control

that bear or contain the Infringing Marks, or any other mark that is confusingly similar to, or is dilutive of, the TITLEIST mark;

D. An Order requiring Defendant to alter all websites under its control or direction to remove the TITLEIST mark and the Infringing Marks, and any other mark that is confusingly similar to, or is dilutive of, the TITLEIST mark;

E. An Order requiring Defendant to identify, by name and contact information, all sources, manufacturers, and suppliers for the products bearing the Infringing Marks;

F. An Order requiring Defendant to file with this Court and serve on Plaintiff's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

G. An Order requiring Defendant to pay Plaintiff compensatory damages in an amount as yet undetermined caused by the foregoing acts of trademark infringement, dilution, false designation of origin, misrepresentation, unfair competition, and unfair trade practices, and trebling such damages for payment to Plaintiff, in accordance with 15 U.S.C. § 1117 and other applicable laws;

H. An Order requiring Defendant to account for and pay to Plaintiff any and all profits arising from the foregoing acts of trademark infringement, dilution, false designation of origin, misrepresentation, unfair competition, and unfair trade practices, and trebling such profits for payment to Plaintiff, in accordance with 15 U.S.C. § 1117 and other applicable laws;

I. Entry of an award of multiple damages as allowed by Mass. Gen. Laws ch. 93A, and fees and costs as provided under state law;

J. An Order requiring Defendant to pay Plaintiff punitive damages in an amount as yet undetermined caused by Defendant's foregoing acts;

K. An Order requiring Defendant to pay Plaintiff the costs of bringing this action, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117 and other applicable laws;

L. An Order requiring Defendant to pay Plaintiff pre-judgment interest on the judgment amount; and

M. Other relief as the Court may deem appropriate.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues so triable by a jury in this action.

Respectfully submitted,

ACUSHNET COMPANY

Dated: July 13, 2017  By: */s/ Jonathan M. Gelchinsky*
  Jonathan M. Gelchinsky (BBO #656282)
  Margaret K. Minister (BBO# 624975)
  Michael C. Hernandez (*pro hac vice* pending)
  PIERCE ATWOOD LLP
  254 Commercial Street
  Portland, ME 04101
  Telephone: (207) 791-1100
  Facsimile: (207) 791-1350